UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BP PRODUCTS NORTH AMERICA INC.,
A Maryland corporation,

        Plaintiff,

vs.

OAKRIDGE AT WINEGARD, INC., a
Florida corporation; MAHAMMAD
QURESHI, an individual; and PACIFIC
ENERGY, INC., a Florida corporation,

        Defendants.

_____/

CASE NO.: 6:06-cv-491-Orl-19DAB

**BP'S RESPONSE TO OBJECTION TO**
**MAGISTRATE'S REPORT AND**
**RECOMMENDATION**

        BP Products North America Inc. responds to Oakridge at Winegard, Inc. and Mahammad Qureshi's Objection ("Objection") (DE 131) to Magistrate Baker's Report and Recommendation (the "Report") (DE 123) as set forth below.[1]  In the Report, Magistrate Baker recommends that the Court grant BP's motion to enforce settlement, enter final judgment and close the case.

## I.    *Standard of Review*

        Although under 28 U.S.C. §636(b)(1) the Court may make a de novo determination of those portions of the Report to which objection is made, credibility assessments made by a magistrate cannot be rejected absent a new hearing because they constitute "essential, demeanor-intensive fact finding by a magistrate judge." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1195-6 (11th Cir. 2006).[2]

---

1 Notably, the objection exceeds the 20-page limitation of M.D. Fla. L.R. 3.01(c).

2 *Hamad v. Busch Entertainment Corp.*, 2006 U.S. Dist. LEXIS 66028 *7 (M.D. Fla. 2006) (enforcing settlement is dispositive, making a magistrate's R & R subject to de novo review by district judge).  However, only specific, written objections are subject to de novo review.  *See* 28 U.S.C. §636; Fed. R. Civ. P. 72(b); *Tifer v. United States*, 2004 U.S. Dist. LEXIS 15446 (M.D. Fla. 2004) (DE 123, p. 14).

II.     *Defendants' Objections*

Oakridge and Mr. Qureshi make the following objections to the Report -- (1) BP filed an Amended Complaint and therefore waived its motion to enforce settlement or is estopped from enforcing it; (2) the Magistrate's finding that Mr. Schillinger had clear and unequivocal authority to settle this case is error; (3) the Magistrate's finding regarding the release in the settlement is error; and (4) the recommendation for entry of a final judgment is error (DE 131, pp 14-23).

Oakridge and Mr. Qureshi's objections #1 and #4 should be overruled pursuant to the law cited in this response. Their objections #2 and #3 should also be overruled because they hinge on the Magistrate's credibility assessments of witnesses. BP addresses these objections below in the sequence that Oakridge and Mr. Qureshi present them.

### *Objection #1 -- Compliance with Court Order is not a Waiver or Estoppel*

A.     *Waiver*

Waiver is an intentional or voluntary relinquishment of a known right, or conduct that infers relinquishment of a known right. *Thomas N. Carlton Estate v. Keller*, 52 So.2d 131 (Fla. 1951); *Fireman's Fund Ins. Co. v. Vogel*, 195 So.2d 20 (Fla. 2d DCA 1967). The elements of waiver are (1) the existence at the time of the waiver of a right; (2) knowledge of the right; and (3) the intention to relinquish it. *Taylor v. Kenco Chemical & Mfg. Corp.*, 465 So.2d 581, 587 (Fla. 1st DCA 1985). Waiver may be express or implied from conduct that leads one to believe a right was waived. *Thomas N. Carlton Estate, supra*. When waiver is implied, "the acts, conduct, or circumstances relied upon to show waiver must make out a clear case." *Fireman's Fund, supra* at 24.

Oakridge and Mr. Qureshi argue that BP waived its motion to enforce when it filed an Amended Complaint. BP filed its motion to enforce on August 15, 2006 (DE 85) and had it heard on September 26, 2006 (DE 118).

In this case, the Court required any amendments to the pleadings on or before September 29, 2006 (DE 82). On September 18, in anticipation of the September 26 hearing on its motion to enforce, BP filed an agreed motion enlarging its time to file any amended complaint through October 16. BP cited as grounds its pending motion to enforce (DE 106). The Court granted BP's motion to enlarge time (DE 107). On October 16, before the Magistrate issued his Report, BP moved for leave to file its Amended Complaint. BP did so without any party objecting - and in an abundance of caution - while its motion to enforce remained pending (DE 121-122).

These facts show BP complied with the Court's pretrial deadline to move for leave to amend and is not a waiver. The Magistrate did not issue the Report until several days after BP moved for leave to amend. This is not an express waiver. Nor is it a "clear case" of waiver by conduct. In fact, BP's acts establish the absence of waiver. For example, at the close of the evidentiary hearing, BP made an *ore tenus* motion to enlarge the time to amend the pleadings on the basis that the Report may make any amendment moot (DE 130, p. 180). The Magistrate deferred entry of any order pending issuance of the Report. *Id.* Further, BP also sought leave to enlarge the time to respond to Oakridge's newly filed counterclaim on the basis that resolution of the Objection may make it moot. This too was not opposed by anyone (DE 133).

By filing its Amended Complaint, BP simply complied with the Court's Order - in an abundance of caution - and was not opposed by any party.  Compliance with court orders does not amount to a waiver or estoppel.  *See Schreiber v. Schreiber*, 217 So.2d 301, 303 (Fla. 1968) (refusing to apply waiver or estoppel to a petitioner for divorce seeking an appeal of alimony while accepting alimony payments made pursuant to court order appealed from).

B.     *Estoppel*

The essence of estoppel is causing another person to believe in the existence of a certain state of affairs to induce the person to change their position to their detriment.  *Taylor v. Kenco Chemical & Mfg. Corp.*, 465 So.2d 581, 586-87 (Fla. 1st DCA 1985).  Unlike waiver, one asserting estoppel must rely on the acts of the other party and change position to their detriment.  *See  Taylor, supra* at 586-7.  In this case, Oakridge and Mr. Qureshi's objection based on estoppel fails.  They cannot establish detrimental reliance because BP filed an Amended Complaint.  In fact, their Objection does not identify any detrimental change in position.  Accordingly, Oakridge and Mr. Qureshi's Objection #1 to the Report should be overruled.

### *Objection #2 -- Counsel for Defendants had Clear, Unequivocal Authority to Settle*

The Magistrate's finding that Mr. Schillinger had clear and unequivocal authority from his clients to settle this case is based on his observation of the witnesses, including the assessment of the demeanor and credibility of:  (i) counsel for BP – Blumstein; (ii) counsel for Pacific Energy, Inc. – Weston; (iii) the independent attorney and escrow agent – Mitchell; (iv) attorney Schillinger; and (v) Qureshi himself.  The Magistrate properly determined that Schillinger had authority to enter into the July 28 settlement based on the credible testimony of Blumstein, Weston and Mitchell, while

discounting the testimony of Schillinger and Qureshi, which the Magistrate deemed not credible (DE 123, pp. 10, 12).

      A.    *Record Establishes Clear and Unequivocal Authority to Settle*

The Magistrate - relying on *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) – found that Schillinger had clear and unequivocal authority to settle this case as he did. The *Murchison* factors the Magistrate relied on are: (1) discussions between attorney and client during settlement negotiation; (2) knowledge by the client that his lawyer was in the process of negotiating settlement; (3) discussions with the client regarding progress of settlement; (4) knowledge of the settlement; and (5) sophistication of the client (DE 123, p. 11).

The record demonstrates that Oakridge, Mr. Qureshi and their counsel participated in mediation just days before they reopened settlement discussions (DE 93; DE 123, pp. 11-12; DE 130, pp. 146-7). Oakridge and Mr. Qureshi initiated these discussions on July 27 by giving their counsel unbridled direction "to settle the case." (DE 130, pp. 146-7; P's Exhibit 1).

| | |
|---|---|
| Q (Blumstein): | Is it true that you authorized Mr. Schillinger to engage in settlement discussions with myself prior to him issuing that e-mail on July 27th to both myself and Ms. Weston? |
| A (Qureshi): | Prior to July 27th, even I think July, I believe, July, I told him settle the case with Lee. I said, renegotiation with them, settle the case, so he set up some kind of mediation, which is – we went to mediation. It didn't settle. And then when I come back, I said, did you settle? Did you hear back? That's why I told him to settle the case. |
| (DE 130, pp. 146-7). | |

The record also shows Oakridge and Mr. Qureshi knew about Schillinger's July 28 settlement offer to pay BP the unamortized monies due to settle (DE 123, pp. 6, 14-15; DE 130, p. 73). It also shows Oakridge and Mr. Qureshi knew about the settlement because Schillinger

electronically forwarded it to them when it was consummated (DE 130, pp. 120-1; P's Exhibit 4). The July 28 settlement stood firm for almost two weeks through August 11 without anyone objecting to the deal, including several attorneys representing Oakridge and Mr. Qureshi, including Mr. Schillinger, Ms. Phillips and Mr. Serrano (DE 130, p. 21).[3]

Finally, the Magistrate recognized Mr. Qureshi to be a sophisticated litigant who relies on his counsel to carry out his directives (DE 123, p. 11; DE 130, p. 153). Accordingly, BP – like in *Murchison* - satisfies its burden that Schillinger had clear and unequivocal authority to enter into the July 28 settlement on behalf of Oakridge and Mr. Qureshi. Any post-settlement gamesmanship by them and/or their various counsel only served to bolster this finding.

B.    *Qureshi and Schillinger's Lack of Credibility*

As the Magistrate recognized, Schillinger's post-settlement actions – after almost two weeks of silence by Oakridge, Mr. Qureshi and their three (3) counsels - show displeasure with the July 28 settlement. But it does not show a lack of authority to Schillinger. Subsequent displeasure with a settlement will not defeat its enforcement. *Murchison* at 1487. This conduct was not countenanced in *Murchison* as a basis to challenge clear and unequivocal authority to settle - nor should it be here. In fact - for the Magistrate's part - this only served to discredit Oakridge, Mr. Qureshi and their counsel (DE 123, pp. 10, 12).

For example, on August 11 Oakridge and Mr. Qureshi - via Schillinger - unilaterally tried to renegotiate the settlement to make Pacific pay $100,000.00 of the settlement monies due to BP (DE 123, P's Exhibit 5). However, this was not part of the July 28 settlement (DE 130 p. 113).

---

3 Oakridge and Mr. Qureshi rely on Schillinger's trial schedule to explain their silence with respect to the July 28 settlement (DE 131, p. 11). However, they cannot explain why Qureshi, Phillips and Serrano stood silent for almost 2 weeks before attempting to renegotiate the settlement.

| Q (Blumstein): | . . .on July 28th, you never stated or referenced any indemnification agreement or monies to come from Pacific in your settlement proposal to BP to pay the $263,000 some odd thousand dollars; isn't that also true? |
|---|---|
| A (Schillinger): | Well, it's true because I didn't think that that (*sic*) was any of B.P.'s business. That's between my client and Pacific. |
| (DE 130, p. 113). | |

The Magistrate's credibility finding as to Schillinger comes as no surprise when a 35-year attorney licensed to practice in New York and Florida initiates settlement discussions with all parties to resolve the case at the direction of his client and then testifies that settlement terms are not the business of one of them (DE 123, pp. 10, 12; DE 130, pp. 104-5).

Further, on August 24 Oakridge and Mr. Qureshi – again via Schillinger - tried to renegotiate the settlement to further reduce their settlement payment to BP based on an alleged security deposit and certain rebates (DE 95, ¶4). This too was not part of the July 28 settlement (DE 130, p. 113).

| Q (Blumstein): | Isn't it true on the 28th of July, you never stated in your settlement proposal any reference to credits, rebates or gas security deposits; isn't that true? |
|---|---|
| A (Schillinger): | That's true. |
| (DE 130, p. 113). | |

Finally, at the evidentiary hearing Oakridge and Mr. Qureshi - via Schillinger – provided a third version to the settlement which sought to reduce to zero their settlement payment to BP, while requiring Pacific to pay all settlement sums (DE 123, pp. 9-10).

Oakridge and Mr. Qureshi's gamesmanship permeates this entire case from start to finish. It begins with them selling Pacific a property out from under BP without honoring BP's contractual right of first refusal (DE 1-3). Next, Oakridge and Mr. Qureshi refuse to cooperate in good faith when BP exercised its right of first refusal – refusing to provide BP the applicable documentation so BP may complete its due diligence (DE 61). This is despite BP paying out-of-pocket $200,000 into escrow to show its good faith (DE 130, p. 58). Next, Oakridge and Mr. Qureshi refuse to settle at mediation as was their right (DE 78). However, they then re-start settlement negotiations to stop BP's purchase of the station after BP deposited $200,000 into escrow (DE 130, P's Exhibit 1). After then inducing BP to agree to settle on monetary terms, Oakridge and Mr. Qureshi now want to renegotiate, despite the acknowledgement to the escrow agent that the case is settled (DE 130, p. 59).

At this stage, Oakridge and Mr. Qureshi's gamesmanship – if countenanced – leaves BP without a station; out $200,000.00; and without a settlement for monies rightfully due. It is no surprise that the Magistrate found that Oakridge, Mr. Qureshi and their attorney, Schillinger, were not credible in this case (DE 123, pp. 10, 12).

*Objection #3 -- The July 28 Settlement – A Meeting of the Minds as to the Release*

With the authority to settle in hand, Schillinger – for Oakridge and Mr. Qureshi – enters into a July 28 settlement (DE 130, pp. 54-56, 59, 63, 74-77; P's Exhibit 2). It included a release of all claims in this suit, as shown by Pacific's counsel:

| Q (Blumstein): | And what do you recall about that communication that took place the afternoon of the July 28th? |
|---|---|
| A (Weston): | . . . my client was simply gonna be waiving its claims against Oakridge and Mr. Qureshi and there was no further obligation on the part of my client. And, so, in that discussion, Mr. Schillinger said, yeah, we're gonna pay the 263,000. And I wrote down the number . . . it was the same number that showed up in your letter. He said, we're gonna pay that number. And I very distinctly remember saying, okay, and are all of the other claims against all of the parties and among the parties going to be dismissed?? And Mr. Schillinger said, Yes. And you said that's my understanding. And the second question I said was, and *everybody is gonna sign a general release with regards to the claims in this suit? And both of you guys said, yes.* (emphasis added) |
| (DE 130, pp. 74-5). | |

Oakridge and Mr. Qureshi challenge the Magistrate's finding that a release of all claims in this suit was part of the July 28 settlement - on the theory of unilateral mistake. To this end, they primarily rely on *FIGA v. Love*, 732 So.2d 456 (Fla. 2d DCA 1999). However, the *FIGA* case is premised on a clerical error by a claims examiner – not an attorney - when issuing a counter-offer to a settlement demand. The error was off by a digit and corrected in writing the following day. Unlike *FIGA*, the alleged mistake here was made by a 35-year attorney licensed to practice law in Florida and New York who knows the meaning and effect of a release of all claims (DE 130, pp. 104-5, 133).[4]

---

4 Schillinger was one of three attorneys representing Defendants in this case – all of whom were aware of the July 28 settlement, the claims in the case and the legal effect of a release of all claims in suit.

Further, nobody - including Oakridge and Mr. Qureshi's other attorneys - addressed this alleged mistake for almost two weeks. Instead, to the extent this was a unilateral mistake, it constitutes an inexcusable lack of due care not subject to rescission. *BMW of North America, inc. v. Krathen*, 471 So.2d 585 (Fla. 4th DCA 1985) (a unilateral mistake in a settlement agreement constitutes an inexcusable lack of due care).

### Objection #4 -- Entry of Final Judgment is Consistent with the Settlement

Settlement agreements are to be interpreted in accordance with their terms and underlying intent. *Sun Microsystems of California, Inc. v. Engineering and Manufacturing Systems, C.A.*, 682 So.2d 219 (Fla. 3d DCA 1996). The Magistrate correctly concludes that the settlement required Oakridge and Mr. Qureshi to pay BP on or before August 27, 2006 (DE 123, p. 13). Because we are well past that date, the Magistrate appropriately recommends entry of final judgment in accordance with the terms and intent of the July 28 settlement.

The Magistrate's recommendation is consistent with the parties' settlement and applicable law. A good example is found in the case of *Dania Jai-Alai Palace, Inc. v. Sykes*, 495 So.2d 859 (Fla. 4th DCA 1986). In *Sykes*, the court enforced a settlement calling for a $6,000.00 payment from one party to the other by a date certain in exchange for satisfactory mutual releases. The settlement was not enforced until almost five (5) months after the payment was due following a hearing. Although the settlement did not mention entry of final judgment, the court enforced the settlement by entry of final judgment and dismissal of claims, which was undisturbed on appeal.

Defendants challenge the Magistrate's authority to recommend entry of final judgment and rely on the case of *Johnson v. Bezner*, 910 So.2d 398, 401 (Fla. 4th DCA 2005). *Johnson* is readily

distinguishable because the court there – in enforcing the settlement – required a party to retain specialized counsel and expend monies, a term never part of any settlement agreement.

Here, the underlying intent of the settlement reached between BP, Oakridge, Qureshi and Pacific was for Oakridge and Mr. Qureshi to pay BP monies; allow Pacific to remain in possession of the station; and to dispose of all claims in suit (DE 130, P's Exhibit 2). Since payment of the settlement monies is almost three (3) months in arrears - as was the case in *Sykes* – the Magistrate's entry of final judgment is appropriate and consistent with the intent of the parties' July 28 settlement without inserting any addition terms like those found in *Johnson*.

*Conclusion*

BP respectfully requests this Court adopt the Magistrate's Report and close the case without further argument, including oral argument requested by Defendants.

CASE NO.: 6:06-cv-491-Orl-19DAB

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing notice has been furnished via CM/ECF this 17th day of November, 2006 to: **Lee H. Schillinger, Esq.**, Law Office of Lee H. Schillinger, P.A., 4601 Sheridan Street, Suite 202, Hollywood, FL 33021-3432; **Emily J. Phillips, Esq.**, MAQ Group, 6221 W. Atlantic Boulevard, Margate, Florida 33063; **Hal K. Litchford, Esq.**, Litchford & Christopher Professional Associates, Bank of America Center, 390 North Orange Avenue, PO Box 1549, Orlando, Florida 32802 and **Richard C. Swank, Esq.**, 390 North Orange Avenue, PO Box 1549, Orlando, Florida 32802.

GORDON HARGROVE & JAMES, P.A.
*Attorneys for BP Products North America Inc.*
2400 East Commercial Boulevard, Suite 1100
Fort Lauderdale, Florida 33308
Telephone:     (954) 958-2500
Facsimile:     (954) 958-2513

By:  ___s/ MARK BLUMSTEIN___
      Moises Melendez, Esq.
      Florida Bar No. 0908835
      mmelendez@ghj.com
      Mark Blumstein, Esq.
      Florida Bar No. 0090700
      mblumstein@ghj.com